# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY,<br>    Plaintiff,<br><br>v.<br><br>R.I. CRANSTON ENTERTAINMENT INC.; STEVEN MEDEIROS; ABIGAIL RATCHFORD; ALYSSA NOBRIGA; AMANDA CERNY; ARIANNY LOPEZ; BRENDA GEIGER; BROOKE JOHNSON a/k/a BROOKE TAYLOR; DENISE TRLICA a/k/a DENISE MILANI; DESSIE MITCHESON; DEVIN JUSTINE TAKEGUMA; EMILY SEARS; JACLYN SWEDBERG; JAIME EDMONDSON LONGORIA; JESSICA BURCIAGA; JESSICA HINTON a/k/a JESSA HINTON; JESSICA GOLDEN a/k/a JESSE GOLDEN; JOANNA KRUPA; KEELEY HAZELL; KRYSTAL FORSCUTT HIPWELL; LINA POSADA; LUCY PINDER; MARIANA DAVALOS; NIKKI LEIGH; PAOLA CANAS; RHIAN SUGDEN; SHELBY CHESNES; TIFFANY TOTH GRAY; TIFFANY SELBY; and URSULA MAYES,<br>    Defendants. | C.A. No. 21-63-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge

Before the Court is Plaintiff The Princeton Excess and Surplus Lines Insurance Company's ("Princeton") Motion for Summary Judgment, and Defendants' Cross-Motion for Summary Judgment.  ECF Nos. 53, 58.  For the reasons stated below, Princeton's Motion is DENIED and Defendants' Motion is DENIED in part and GRANTED in part.

## I.   BACKGROUND

Defendant R.I. Cranston Entertainment, Inc. (d/b/a "Wonderland") operated an adult entertainment club in Providence, Rhode Island.  Twenty-eight models ("Models") sued Wonderland, alleging that from 2015 to 2019, Wonderland included images of them in its advertisements without their consent.  *Ratchford v. R.I. Cranston Ent., Inc.*, No. 19-496, ECF No. 1 ("*Ratchford* Action").

Princeton, which insured Wonderland under two Policies from 2016 to 17 and 2017 to 18 ("Policies"), agreed to defend the club but reserved the right to deny insurance coverage.  The 2017 to 18 Policy included a broad exclusion for defamation, invasion of privacy, and various forms of advertising injury ("Exhibitions and Related Marketing Exclusion"), as well as other exclusions that applied to both Policies.  ECF Nos. 59-4, 59-5, and 59-6.  In the reservation of rights letter, Princeton advised Wonderland that there was no coverage under the 2017 to 18 Policy and that it was further evaluating coverage under the 2016 to 17 Policy, but that it would provide a defense to "all of the allegations in the Complaint."  ECF No. 59-9 at 3.  Princeton appointed a defense attorney, Kevin Cain, and entered court-ordered mediation with

the Models.[1]  ECF No. 67 at 3-9.  Attorney Cain recommended that Wonderland seek independent counsel to assess coverage for the 2017 to 18 Policy.  *Id.* at 6.

Mediation proceeded.  Princeton offered $10,000 per model for each of the five models who alleged publication during the 2016 to 17 Policy, which the Models rejected.  Princeton offered nothing on the 2017 to 18 Policy.  The Models countered by offering to settle with Golden Bear (another insurer) and write off overlapping portions of Princeton's coverage.[2]  They also offered to take a consent judgment, a covenant not to execute, and an assignment of rights against Princeton in lieu of payment.  The offer was initially made to Princeton through Attorney Cain, who brought it to Wonderland a week later, with the caveat that because of the coverage dispute, he could not advise on that part of the settlement.  He advised Wonderland to hire independent counsel to assess that part of the offer.  *Id.* at 7-9.

Wonderland retained its own counsel and began negotiating with the Models. Nearly three months later, Wonderland entered into a Settlement Agreement and Release, in which Wonderland agreed to a judgment for $1.895 million ("Consent Judgment") to settle all disputed claims.  *Id.* at 9-12.  As part of the settlement, Wonderland assigned to the Models its rights under the club's insurance Policies with

---

[1] The parties dispute how Attorney Cain was paid but agree that he filed an answer on behalf of Wonderland, participated in mediation, and corresponded with both parties regarding Wonderland's defense.  ECF No. 67 at 3-9.

[2] The *Ratchford* Action was a consolidated action, with Princeton purportedly agreeing to share fees with Golden Bear, the company that insured Wonderland before and after the Princeton periods.  ECF No. 67 at 3-7.

Princeton in exchange for a covenant not to execute against Wonderland.   ECF No. 59-18.

Wonderland then submitted to the Court to enter the Consent Judgment for $1.895 million, stating that it was "reasonable in light of what a jury might reasonably award in compensation attributable to Defendants' alleged conduct over many years, coupled with the amount of attorneys' fees and costs a Court may reasonably award pursuant to 25 U.S.C. § 1125 in the event Plaintiff prevails at trial." ECF No. 59-20 at 4. Princeton did not consent to the judgment but knew that negotiations were ongoing as to the "uncovered" claims. ECF No. 59-13 at 3. The Court entered the Consent Judgment and dismissed the *Ratchford* Action.   ECF No. 17 (of C.A. No. 19-496).

Princeton then sued Wonderland and the Models, seeking a declaratory judgment that it has no obligations under the Consent Judgment.   ECF No. 1. Defendants counterclaimed, seeking payment under the Policies and damages for breach of contract and bad faith.   ECF No. 40.   Princeton moved for summary judgment on its defense and indemnity obligations.   ECF Nos. 53 and 54.   Defendants moved for summary judgment on their Counterclaims.  ECF No. 58.

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure controls in deciding whether a party is entitled to summary judgment.   Fed. R. Civ. P. 56.   "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (citation omitted).  There must first be no genuine issues of material fact.  "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . . '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law."  *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994) (citations omitted).

Additionally, the moving party must have a right to judgment as a matter of law.  The moving party is entitled to judgment as a matter of law if the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex*, 477 U.S. at 323.  The

Court decides this latter element by evaluating "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 252 (internal quotation marks omitted) (citation omitted).

## B.    Applicable Law

When interpreting an insurance policy, Rhode Island courts follow general principles of contract law.[3]  *Town of Cumberland v. Rhode Island Interlocal Risk Mgmt. Tr., Inc.*, 860 A.2d 1210, 1215 (R.I. 2004) (citation omitted).  The Court looks at the "four corners of a policy," analyzing the policy "in its entirety, affording its terms their 'plain, ordinary and usual meaning.'"  *Id.* (internal quotation marks and citations omitted).  "The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." *Id.* (citing *Pressman v. Aetna Cas. & Sur. Co.,* 574 A.2d 757, 760 (R.I. 1990)) (internal quotation marks omitted).  If the terms are unambiguous, the Court will enforce them according to their plain meaning.  *Aetna Cas. & Sur. Co. v. Sullivan*, 633 A.2d 684, 686 (R.I. 1993).  If the terms are "ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured and against the insurer." *Id.* (citation omitted).

---

[3] This is an insurance dispute involving a policy issued in Rhode Island, to a Rhode Island company, so Rhode Island state substantive law applies.  *Bank of Rhode Island. v. Progressive Cas. Ins. Co.*, 19 F. Supp. 3d 378, 384 (D.R.I. 2014).

## III.    DISCUSSION

Princeton moves for partial summary judgment on Counts I, II, IV, V, IX, XI, and XII of its Complaint and for summary judgment on all the Defendants' Counterclaims.  ECF No. 53.  It seeks a declaratory judgment stating that (1) no coverage was available for claims during the 2017 to 18 Policy Period; (2) Wonderland breached the insurance contract by agreeing to the Consent Judgment in violation of the cooperation and non-assignment clauses; and (3) the Consent Judgment was unreasonable, and thus unenforceable, as a matter of law.  Defendants dispute each of these arguments and seek summary judgment in their favor on all Princeton's Counts and on all Defendants' Counterclaims.  ECF No. 58.

The Court begins by examining coverage under the Policies.

### A.    PLAINTIFF'S CLAIMS: Duty to Indemnify (Counts XI and XII)

Princeton argues that it had no duty under either Policy to indemnify Wonderland or the Models, pointing to the Exhibitions and Related Marketing Exclusion, the exclusion for punitive damages, and exclusions for claims made before and after the policy periods.  Because an assignee takes subject to the coverage defenses available against the insured (*see DeMarco v. Travelers Ins. Co.*, 26 A.3d 585, 627 (R.I. 2011)), Princeton argues that these exclusions run against the Models and bar coverage for all settled claims.  ECF No. 54 at 23.

Under Rhode Island law, the insured "bears the burden of proving a prima facie case, including but not limited to the existence and validity of a policy, the loss as within the policy coverage, and the insurer's refusal to make payments as required by the terms of the policy."  *TranSched Sys. Ltd. v. Fed. Ins. Co.*, 67 F. Supp. 3d 523,

527 (D.R.I. 2014) (citing *Gen. Accident Ins. Co. of Am. v. Am. Nat. Fireproofing, Inc.*, 716 A.2d 751, 757 (R.I. 1998)).  If it can do so, the burden then shifts to the insurer to prove "the applicability of policy exclusions . . . ."  *Id.* (citing same).  If the language of an exclusion is unambiguous, the Court will give the words "their plain and ordinary meaning."  *Empire Fire and Marine Ins. Cos. v. Citizens Ins. Co. of Am./Hanover Ins.*, 43 A.3d 56, 59-60 (R.I. 2012) (internal quotation marks and citations omitted).  If ambiguous, the policy will be construed in favor of the insured. *Id.*  Coverage disputes are analyzed by "interpret[ing] the policy as a whole," and courts "will not apply the policy as written if doing so would render the coverage provided illusory."  *Id.* at 60 (citing *Emps. Mut. Cas. Co. v. Pires*, 723 A.2d 295, 299 (R.I. 1999)).

### 1.    Exhibitions and Related Marketing Exclusion (Count II)

Princeton argues that no coverage was available for 2017 to 18 under the Exhibitions and Related Marketing Exclusion, and the Consent Judgment was thus improperly allocated because it was a lump sum that included uncovered claims.[4] ECF No. 54 at 25-27.

The Policy states that Princeton "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" and that Princeton "will have the right and duty to defend the insured against any 'suit' seeking those damages [but] will have no duty

---

[4] Most of the images—thirty-nine in total—fell within this period (ECF No. 59-9 at 8) and the Consent Judgment was based on Princeton's denial of coverage under the 2017 to 18 Policy.  ECF Nos. 59-9 at 8, 59-20 at 3.

to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply."  ECF No. 57 at 167.

"Personal and advertising injury" includes:

    a.  False arrest, detention, or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*Id.* at 176.  But under the 2017 to 18 Exhibitions and Related Marketing Exclusion, Princeton clarified that the Policy does not apply to:

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement";

if such activities "arise out of or are part of 'exhibitions and related marketing,'" which are broadly defined.[5]  *Id.* at 152.  The *Ratchford* Action alleges false advertising and false association under the Lanham Act, misappropriation, violation of the Models' common-law and statutory privacy rights, and defamation (ECF No. 59-1 at 37-44), all of which fall squarely under Personal and Advertising Injury.  So the burden falls to Princeton to show that its exclusion is valid.

The Policy and the Exclusion are clearly worded, specific, and directly contradictory to each other.  Under Rhode Island law, policy exclusions must be unambiguous, and "contract provisions subject to more than one interpretation are construed strictly against the insurer."  *TranSched Sys. Ltd.*, 67 F. Supp. 3d at 527-28 (citations omitted).  Contradictory terms must be interpreted to reflect the reasonable expectations of the insured.  *Elliott Leases Cars, Inc. v. Quigley*, 373 A.2d 810, 813-14 n.1 (R.I. 1977).[6]  When an insurer expressly purports to cover certain acts

---

[5] "'Exhibitions and related marketing' means: (a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and websites.  (b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.  (c) Merchandising, advertising or publicity programs or material for the operations and materials described in (a) or (b) above."  ECF No. 57 at 152.

[6] The Rhode Island Supreme Court has held that this rule applies even when a specific exclusion might otherwise control, because it would be "manifestly unfair to permit [the insurer] . . . to mislead the other party by setting forth a clearly apparent promise . . . and then designedly 'burying' elsewhere in the document, in fine print, provisions which purport to limit or take away the promise."  *Elliott Leases Cars, Inc.* at 813 (citing *Seal v. Tayco, Inc.*, 400 P.2d 503, 505 (Utah 1965)).

but elsewhere disclaims coverage, the resulting ambiguity is construed in favor of the insured. *Town of Cumberland*, 860 A.2d at 1216-17 (an insurance policy may not expressly cover intentional torts and then limit coverage to "accidental" occurrences).

Likewise, Rhode Island courts will not uphold an exclusion that leads to unreasonable results, particularly if doing so will make another part of the coverage illusory. *Campbell v. Norfolk & Dedham Mut. Fire Ins. Co.*, 682 A.2d 933, 936 (R.I. 1996) (declining to uphold an exclusion for collapse of a building's foundation where the policy expressly covered "collapse of a building or any part of a building"). The question is whether the Exclusion—including the definition of "Exhibitions and Related Marketing"—is so broad as to "preclude coverage in almost any circumstance." *Great Am. E & S Ins. Co. v. End Zone Pub & Grill of Narragansett, Inc.*, 45 A.3d 571, 576 (R.I. 2012) (citing *Pressman*, 574 A.2d at 759). An insurer can structure coverage as narrowly as it likes, so long as the coverage is not illusory and does not violate public policy. *Am. Com. Ins. Co. v. Porto*, 811 A.2d 1185, 1201 (R.I. 2002).

This issue—and indeed, this exact fact pattern and Policy language—was recently litigated in the Fifth Circuit, where a district court in Texas held that the Exhibitions and Related Marketing Exclusion was "so far reaching that it swallow[ed] up any covered 'advertisement,'" and was thus illusory as to advertising coverage, even though it left certain types of personal injury claims intact. *Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, 621 F. Supp. 3d 746, 756-57 (S.D. Tex. 2022), *rev'd*, 78 F.4th 815 (5th Cir. 2023), *opinion withdrawn and superseded on*

11

*reh'g*, 84 F.4th 274 (5th Cir. 2023), and *rev'd and remanded*, 84 F.4th 274 (5th Cir. 2023).   The district court in *A.H.D. Houston* reasoned that the Personal and Advertising Injury section included two distinct types of coverage—personal injury and advertising injury—and that excluding subsections (d), (e), (f), and (g) effectively barred "all" claims for the latter.[7]  *Id.*  The Fifth Circuit disagreed, construing the section as an "umbrella" provision that was not illusory because it left coverage for (a), (b), and (c) intact.[8]  *Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, 84 F.4th 274, 286 (5th Cir. 2023).

Princeton argues that the exclusion applies only to "exhibitions" and thus leaves some coverage intact.   ECF No. 69 at 10.   But by its plain language, "exhibitions" encompass almost all forms of production and advertising: "motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work . . . ."  ECF No. 57 at 152.  Paragraph (a) of the exclusion includes commercials and internet productions (including social media), as well as material produced "in any medium including videos, phonographic

---

[7] A district court in Florida reached the same conclusion in *Princeton Express v. DM Ventures USA LLC*, declining to uphold a "field of entertainment" exclusion on the grounds that it would exclude "anything listed in (d) through (g) listed under Personal and Advertising Injuries" and would thus make the Policies illusory as to advertising coverage.  209 F. Supp. 3d 1252, 1258 (S.D. Fla. 2016).

[8] But as the dissent in *A.H.D. Houston* noted, Princeton's advertising coverage remained contradictory.  "[T]he policy contains two provisions that appear to be in irreconcilable conflict with one another—what one provision giveth, the other taketh away . . . . [H]ow is the reader supposed to know which one to apply, and which one to ignore?"  84 F.4th at 287-88.

recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and websites"—a broad-ranging definition that contradicts Princeton's purported coverage for "advertising" (defined as "a notice that is broadcast or published to the general public . . . about your goods, products or services"). *Id.* at 152, 174. And Paragraph (c) withdraws coverage for all related forms of marketing. *Id.* at 152.

The claims-based approach followed by the Fifth Circuit in *A.H.D. Houston* has no analog in Rhode Island law, and the Court declines to apply it here. Nor is coverage saved by the IP Exceptions, which purportedly restore coverage for advertising related to Wonderland's food and liquor services.[9] ECF No. 61 at 17-18. In Rhode Island, an exception to an exclusion cannot be construed to restore coverage. *Cheaters, Inc. v. United Nat. Ins. Co.*, 41 A.3d 637, 645-46 (R.I. 2012) (citation omitted). Princeton argues that these exceptions preserve coverage for "use of another's advertising idea or infringement of copyright, slogan, or trade dress in an advertisement for any aspect of Wonderland's business other than exhibitions or marketing for exhibitions (such as its food or liquor service)." ECF No. 61 at 17-18. But the Exhibitions and Related Marketing Exclusion precludes coverage for *any* commercial, web production, or promotional event, regardless of whether the advertisement relates to a show, a theatrical performance, or purchase of a

---

[9] The IP Exceptions purport to exclude coverage for "the infringement of copyright, patent, trademark, trade secret, or other intellectual property rights" but *not* for "use of another's advertising idea in your 'advertisement'" or "infringement, in your 'advertisement', of copyright, slogan, or trade dress" *unless* copyright infringement arise out of "exhibitions and related marketing." ECF No. 57 at 152.

hamburger.  It would exclude the advertising examples that Princeton cites to make its case.  ECF No. 57 at 152.

The Court finds that 2017 to 18 Policy includes contradictory terms and is thus ambiguous.  *Town of Cumberland*, 860 A.2d at 1216-17.  Furthermore, the broad language of the Exhibitions and Related Marketing Exclusion "preclude[s] coverage in almost any circumstance," and if applied, would make Princeton's advertising coverage illusory.  *Pressman*, 574 A.2d at 759.  The Court thus declines to give it effect.  Because the exclusion does not bar coverage, there is no allocation issue. *TranSched Sys. Ltd.*, 67 F. Supp. 3d at 533.

For these reasons, the Court DENIES Princeton's Motion for Summary Judgment and finds that Princeton owed Wonderland a duty to indemnify for advertising injury arising out of Exhibitions and Related Marketing under the 2017 to 18 Policy (Count II).  ECF No. 53.  The Court GRANTS Defendants' Motion for Summary Judgment as to the same.  ECF No. 58.

### 2.     Publication Before and After the Policy Period (Counts IV and V)

Princeton argues that the Consent Judgment improperly settled claims outside the policy period.  ECF No. 54 at 27.  The Policies unambiguously state that the insurance only applies to offenses committed "during the policy period" and does not apply to "material whose first publication took place before the beginning of the policy period."  ECF No. 57 at 83, 167.  As above, unambiguous words must be given their "plain and ordinary meaning."  *Empire Fire and Marine Ins. Cos.*, 43 A.3d at 59-60.

The problem is that Princeton has provided no evidence to suggest that the Consent Judgment purported to settle claims outside the policy period.  The Consent Judgment was based on a denial of claims for the 2017 to 18 Policy Period, and the plain language of the judgment suggests that it is limited to that period.[10]  *City of Providence v. Emp. Ret. Bd. of City of Providence*, 749 A.2d 1088, 1098 (when faced with ambiguity in a consent judgment, the Court should "adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other") (internal quotation marks and citations omitted).  Thirty-nine images were published during the 2017 to 18 Policy Period, and Princeton acknowledges that twenty-three models alleged claims within this period (Mss. Ratchford, Nobriga, Lopez, Geiger, Milani, Mitcheson, Takeguma, Sears, Burciaga, Hinton, Golden, Krupa, Hipwell, Posada, Pinder, Davalos, Leigh, Canas, Chesnes, Mayes, Swedberg, Longoria, and Toth).  ECF No. 54 at 11.  Princeton has provided no facts to show that the Consent Judgment included claims outside the policy period, so the allocation issue is moot.

The Court DENIES Princeton's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment as to Counts IV and V.  ECF Nos. 53, 58.

---

[10]  *See* ECF No. 59-20 at 3-4 ¶¶ 5-6.  "Princeton took the position that Defendants were entitled to no insurance coverage for advertisements published between April 1, 2017 and April 1, 2018," and the parties "have therefore entered into a settlement agreement pursuant to which . . . Defendants consent to entry of the following judgment for the purpose of compromising disputed claims."

### 3. Punitive Damages (Count IX)

Princeton argues that the Consent Judgment included claims for punitive damages. ECF No. 54 at 27. The Policies state that the insurance does not apply to "[a]ny punitive damages, exemplary damages, or the multiplied portion of any award, because of any 'bodily injury', 'property damage' or 'personal and advertising injury'." ECF No. 57 at 56, 138.

But as above, Princeton has provided no facts to suggest that the Consent Judgment included a claim for punitive damages, and the Consent Judgment expressly states that it is compensatory. ECF No. 59-20 at 4. Conclusory allegations will not sustain a motion for summary judgment. *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020). The allocation issue is moot because there is no evidence that these claims were included.

The Court DENIES Princeton's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment as to Count IX. ECF Nos. 53, 58.

### 4. Breach of Contract: Cooperation Clause, Non-Assignment Clause, and Princeton's Right to Defend (Count I)

Princeton argues that it owes no duty to indemnify because Wonderland breached the terms of the insurance contract by interfering with its right to defend and settling the case in violation of the cooperation and non-assignment clauses. ECF No. 54 at 15-21. Based on the uncontested evidence, the Court finds that because Princeton knew about the Models' offer and took no steps to preserve its rights, it has waived any objection to the terms of the settlement.

16

Waiver is the "voluntary intentional relinquishment of a known right.  It results from action or nonaction by an insurer." *Pacheco v. Nationwide Mut. Ins. Co.*, 337 A.2d 240, 242 (R.I. 1975).  Implied waiver "must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 65 (R.I. 2005) (citation omitted).  A party waives its right where it "[pursues] such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it."[11] *Id.* (citation omitted).

The record shows that Princeton was fully apprised of the Models' offer and took no steps to preserve its rights.  Attorney Cain (Wonderland's defense attorney) brought the offer to Princeton's adjuster, Christine Smith, who shared it with Princeton in July 2020.  ECF No. 59-10 at 3-4.  A week later, he notified Wonderland, copying Ms. Smith and advising Wonderland that it should retain independent counsel to consider the offer.  ECF No. 59-11 at 2-3.  In September 2020, Ms. Smith emailed Princeton stating that "[a]s you know the insured is assigning his rights . . . for the uncovered [Princeton] claims."[12]  ECF No. 59-13 at 3.  The Consent Judgment was signed and approved by this Court in October 2020.  At no point during this

---

[11] The Models object on the grounds of estoppel but have put forward sufficient evidence to support waiver.  *Sturbridge Home Builders, Inc.*, 890 A.2d at 65 ("[o]n summary judgment, the party asserting waiver . . . has the affirmative duty to produce evidence demonstrating the existence of an issue of fact . . .").

[12] Ms. Smith later claimed to be "shocked" and stated that "neither Princeton or myself were aware of any proposal [for a Consent Judgment]"—a position contradicted by the record before the Court.  ECF No. 62 at 22-23; ECF No. 59-23 at 11.

three-month period did Princeton reach out to the insured to assert its rights or advise Wonderland that a settlement would breach the contract.[13]  ECF No. 62 at 16.

The Court also finds that Princeton waived its right to object based on the cooperation clause.   A cooperation clause is a condition precedent, and non-compliance "gives the insurer the right to terminate the policy."  *Ogunsuada v. Gen. Acc. Ins. Co. of Am.*, 695 A.2d 996, 999 (R.I. 1997).  The Policies expressly require Wonderland to cooperate in the investigation and settlement of all claims and state that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense . . . without our consent."  ECF No. 57 at 88, 172.  But cooperation is a reciprocal obligation, and the insurer must "use reasonable diligence in obtaining the insured's cooperation."  *Ogunsuada*, 695 A.2d at 1000.  On these facts, no reasonable jury could look at Princeton's conduct and find that it used "reasonable diligence" to obtain Wonderland's cooperation.

Finally, the Court finds that Princeton waived its right to object based on the non-assignment clause.  As other courts have observed:

> We think the insured should be allowed, as soon as the insurer denies coverage, to protect its interest by negotiating a settlement.  The only valuable asset the insured may have is its cause of action against the insurer and the insured should be able to assign this right to the injured party to protect itself from further liability.

*Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 948 (E.D. Pa. 1995) (citation omitted) (holding that an insured may assign its rights to an injured

---

[13] Princeton had also received the Models' damages disclosure, so it knew what the claims were potentially worth.  ECF No. 56 at 166.

claimant once the insurer denies coverage).[14]   The purpose of a non-assignment clause is to protect the insurer from risk because of a unilateral change in the policy's ownership, not to restrict the insured's right to transfer once the policy has vested. *Id.* at 946.   "[B]ecause an insured's rights to proceeds vests at the time of loss . . . restrictions on the insured's right to assign its proceeds are generally rendered void." *Id.*

Princeton knew of the proposed settlement and chose to sit on its hands.  By choosing to do nothing, Princeton intentionally relinquished its right to defend the *Ratchford* Action and to enforce the cooperation and non-assignment clauses. *Pacheco*, 337 A.2d at 242.   The Court finds that assignment did not breach the contract and does not bar the Models from either enforcing the contract or suing for breach.

The Court DENIES Princeton's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment as to Count I.  ECF Nos. 53, 58.

### 5.    Reasonableness of the Consent Judgment and Whether Princeton Can Be Bound

Princeton argues—by way of defense—that the Consent Judgment was collusive and unreasonable, and thus unenforceable.  ECF No. 54 at 23.

"It is well settled that, when a legal dispute is resolved by agreement of the parties and memorialized by a settlement agreement or consent order and the terms

---

[14] In line with this general rule, many courts hold that when an insurer is defending under a reservation of rights, the insured is free to enter a reasonable settlement for any claims for which the insured has not unconditionally offered to provide coverage. *Patrons Oxford Ins. Co. v. Harris*, 905 A.2d 819, 825-27 (Me. 2006).

of such agreement or order receive the trial court's imprimatur through a consent judgment signed by a justice and entered by the court clerk, the effect of the judgment is absolute unless all parties agree that the consent judgment should be vacated or one party demonstrates that the consent judgment should be vacated or modified pursuant to Rule 60 of the Superior Court Rules of Civil Procedure based on fraud, mutual mistake, lack of consent, or some other extraordinary circumstance." *Andrews v. Lombardi*, 231 A.3d 1108, 1119 (R.I. 2020). In Rhode Island, a consent judgment "has the full force and effect of a decree and is res judicata" and cannot be undone without evidence of misconduct.[15] *D'Amario v. Butler Hosp.*, 921 F.2d 8, 10 (1st Cir. 1990) (citation omitted). Princeton has provided no such evidence.

Princeton argues that the settlement was "unreasonable" based on statements made by Wonderland's manager, Carlos Bortoni, who stated that the offer of $10,000 per model was "crazy" and was upset that Princeton "did not want to fight it." ECF No. 67 at 8. It argues that these statements are incompatible with Wonderland's decision to settle all claims for $1.895 million. Princeton further argues that because Mr. Medeiros stated that he had not read the Consent Judgment, Wonderland could not have truthfully stated that it was reasonable. *Id.* at 11.

Neither the law nor the facts that appear before the Court support Princeton's arguments. That a party may have opposed a settlement does not render a settlement

---

[15] Princeton was not a party to the Consent Judgment. It is bound because the Consent Judgment fixed Wonderland's liability (thus triggering the duty to indemnify) and because Wonderland properly assigned its claims to the Models. *Sheehan v. Richardson*, 315 B.R. 226, 238-39 (D.R.I. 2004), *aff'd*, 185 F. App'x 11 (1st Cir. 2006) (the right to sue is properly assignable under Rhode Island law).

fraudulent or collusive.  *See DeMarco*, 26 A.3d at 605-06 (upholding a settlement and assignment of rights even where the insurer put forward some evidence that the insured objected).   And a party's failure to read a contract does not render it unenforceable.  *Rivera v. Gagnon*, 847 A.2d 280, 285 (R.I. 2004).  A party may rely on their attorney in drafting settlement documents, and the attorney can be presumed to speak for them regardless of whether they have read the documents.  *D'Amario v. Butler Hosp.*, 921 F.2d at 10.

The Court will not "infer bad faith, collusion, or fraud based on innuendo and speculation alone."  *Garcia-Navarro v. Hogar La Bella Union, Inc.*, No. 3:17-CV-01271-JAW, 2022 WL 11266460, at *32 (D.P.R. Oct. 18, 2022).   Concerns about collusion are further assuaged by the fact that the judgment was negotiated under the supervision and guidance of a seasoned Magistrate Judge and that other courts have repeatedly found liability on similar facts.  *See Canas v. Flash Dancers, Inc.*, No. 3:16-CV-393-J-32JRK, 2020 WL 588290 (M.D. Fla. Feb. 6, 2020); *Edmonson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV, 2017 WL 11680315 (S.D. Fla. July 28, 2017), *rev'd and remanded sub nom. Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153 (11th Cir. 2022) (reversed for two defendants on other grounds); *Burciaga v. B&S of Fort Wayne, Inc*, No. 1:20-cv-00367-HAB-SLC, 2021 WL 3704413, at *1 (N.D. Ind. July 29, 2021) (consent judgment approved for $1.9 million).

Princeton knew that a Consent Judgment was being negotiated (ECF No. 59-13 at 3) and having the full benefit of discovery, has put forward no evidence of fraud

or collusion. Without such evidence, the Court declines to find that the Consent Judgment is unreasonable as a matter of law. ECF No. 53.

### 6.    Conclusion

The Court finds that the exclusions do not bar coverage, that Wonderland did not breach the contract, and that the Consent Judgment is not unreasonable as a matter of law. The Court thus DENIES Plaintiff's Motion for Summary Judgment as to Counts I, II, IV, V, and IX and GRANTS Defendants' Motion as to the same. ECF Nos. 53, 58.

The Complaint includes other Policy exclusions that are not before the Court, and so the Court DENIES Plaintiff's and Defendants' Motions for Summary Judgment on Counts XI and XII (duty to indemnify), which cannot be established as a matter of law based on the record before it.[16] *Id.*

### B.    DEFENDANTS' COUNTERCLAIMS

The Court turns to the Defendants' four Counterclaims[17] and both parties' Motions for Summary Judgment on them. The Models—as Wonderland's assignees— counter-sue Princeton for breach of contract, bad faith, and a declaratory judgment stating that Princeton had a duty to defend and indemnify. ECF No. 40. They seek summary judgment on all Counts and Counterclaims, a declaratory judgment on their estoppel defense, and a dismissal of all claims against them. ECF No. 58.

---

[16] *See infra Part B.* Princeton remains free to raise other coverage defenses at trial and may still prevail on Counts XI and XII (no duty to indemnify) if it can show that some other exclusion bars coverage. *See DeMarco*, 26 A.3d at 628 (quoting *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 533 (Iowa 1995)).

[17] The Defendants have dropped their claim for deceptive trade practices.

### 1.    Breach of Contract (Counterclaim I)

To prove a breach of contract claim, the Models must show the existence of a contract, breach, and damages. *Fogarty v. Palumbo*, 163 A.3d 526, 541 (R.I. 2017). The Models argue that as Wonderland's assignees, they are entitled to summary judgment because Princeton breached its duty to defend and indemnify. ECF No. 58-1 at 9-26. The Court agrees as to liability but denies summary judgment as to damages.

### a.    Duty to Indemnify

The duty to indemnify arises when the facts show that the injured party "will ultimately prevail." *Emp.'s Fire Ins. v. Beals*, 240 A.2d 397, 403 (R.I. 1968), *abrogated on other grounds by Peerless Ins. Co. v. Viegas*, 667 A.2d 785 (R.I. 1995). This Court has recognized that the duty to indemnify may be "determined by the facts as they are established at trial or as they are finally determined by some other means (*e.g.*, summary judgment or settlement)." *Bank of Rhode Island*, 19 F. Supp. 3d at 385 (citing *Bankwest v. Fid. & Deposit Co. of Md.*, 63 F.3d 974, 978 (10th Cir. 1995)) (internal quotations omitted).

The duty to indemnify was triggered by the Consent Judgment, which obligated the insured—and thus its insurer—to pay.[18]    *See* ECF No. 57 at 83, 167 (insurer "will pay those sums that the insured becomes legally obligated to pay"). To date, nothing has been paid, and so Princeton has breached its duty to indemnify.

---

[18] As noted above, the Consent Judgment "has the full force and effect of a decree." *D'Amario*, 921 F.2d at 10.

23

b.    **Duty to Defend**

Even if the Court were to find that the duty to indemnify only arises at the end of *this* action, the Court finds that Princeton breached its duty to defend under the 2017 to 18 Policy by failing to take affirmative steps to settle these claims.

The duty to defend is broader than the duty to indemnify; it is triggered based on the pleadings and continues "until the coverage question is resolved." *Travelers Cas. and Sur. Co. v. Providence Washington Ins. Co.*, 685 F.3d 22, 25 (1st Cir. 2012). A proper defense includes "an affirmative duty to engage in timely and meaningful settlement negotiations and to make and consider offers of settlement consistent with an insurer's fiduciary duty to protect its insured from excess liability." *Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1005 (R.I. 2002).

No such negotiations took place here. The record shows that while Princeton engaged in negotiations for claims under the 2016 to 17 Policy, it made no offers on the 2017 to 18 Policy. ECF No. 59-23 at 7-8. Internally and in settlement negotiations, Princeton contended that there was no coverage for this period because of the Exhibitions and Related Marketing Exclusion. *Id.* All three of Princeton's representatives—its manager, claims adjuster, and senior claims specialist—testified that it declined to settle these claims based on the Exhibition and Related Marketing Exclusion and that Princeton was only working to settle claims under the 2016 to 17 Policy. ECF No. 59-22 at 4; ECF No. 59-23 at 7-8; ECF No. 59-24 at 4-5.

Under Rhode Island law, an insurer has "a fiduciary obligation to act in the 'best interests of its insured in order to protect the insured from excess

liability . . . [and to] refrain from acts that demonstrate greater concern for the insurer's monetary interest than the financial risk attendant to the insured's situation.'" *Asermely v. Allstate Ins. Co.*, 728 A.2d 461, 464 (R.I. 1999) (citation omitted). In Rhode Island, this duty runs to third-party assignees.[19] *Id.* The Rhode Island Supreme Court has held that an insurer engaging in multiparty settlement discussions where the claims exceed the Policy limits must "negotiate as if there were no policy limits . . . and as if the insurer alone would be liable for the entire amount of any excess judgment." *DeMarco*, 26 A.3d at 614. The same principle applies here. An insurer defending "all of the allegations in the Complaint" must negotiate in good faith as if all claims are covered and take affirmative steps to "relieve its insured of as much of the insured's potential liability as is reasonably possible given the policy limits and the surrounding circumstances." *Id.*

Princeton argues that it satisfied its duty to defend by retaining Attorney Cain and properly issuing a reservation of rights letter offering to defend all claims. ECF No. 61 at 2-3. But the letter states that Princeton was denying coverage under the 2017 to 18 Policy:

> [T]here is no coverage for advertisements allegedly published during the Policy period for the Second Policy due to certain policy provisions contained within the Second Policy, specifically including but not limited to [the Exhibitions and Related Marketing Exclusion], as well as principles of applicable law. Princeton's appointed counsel will defend all of the allegations in the Complaint, regardless of whether they fall under the First or Second Policy, subject to Princeton's reservation of rights as described below to limit or deny coverage at a later time.

---

[19] Princeton correctly notes that the facts of *Asermely* are not at issue here, but the principle applies. Insurers owe a fiduciary duty to act in the best interests of their insured. *Asermely*, 728 A.2d at 464.

ECF No. 59-9 at 3. Princeton has not pointed to any steps taken by Attorney Cain—beyond submitting a litigation plan at the start of the case—to defend or otherwise try to settle claims under the 2017 to 18 Policy. The evidence causes the Court to read this reservation of rights letter as what it is—a denial of coverage.

The Court has established that this denial was wrongful (*supra Part A*) and Princeton thus owed its insured a duty to engage in reasonable settlement negotiations under *Skaling*. 799 A.2d at 1005. Because the 2017 to 18 Policy included thirty-nine images for which the Models sought $10,000 to $125,000 apiece (ECF Nos. 59-3 at 4, 59-9 at 8), Princeton's failure to engage in settlement negotiations placed its insured at substantial personal risk. *Asermely*, 728 A.2d at 464 (insurers have a fiduciary duty to protect the insured from excess liability). The Court thus finds that Princeton breached its duty to defend as to the 2017 to 18 Policy.[20]

### c.  Damages

In Rhode Island, "the proper measure of damages for breach of contract is that which the injured party can tie to the breach itself." *Emhart Indus., Inc. v. Century Indem. Co.*, 559 F.3d 57, 76 (1st Cir. 2009), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 2009) (citation omitted). Damages cannot be speculative and "must be proven with a reasonable degree of certainty." *Nat'l Chain Co. v. Campbell*, 487

---

[20] The Models also argue that Princeton failed to promptly investigate and communicate with its insured under the 2016 to 17 Policy. ECF No. 58-1 at 9-14. *Skaling*, 799 A.2d at 1010 (insurers have an "implied obligation to promptly and fully respond to their insured [and] to investigate a claim"). These claims are disputed and include issues of material fact that would be properly reserved for a jury.

A.2d 132, 134 (R.I. 1985).  The goal is to put the non-breaching party in the position they would be in had the contract been fully performed.  *Id.* at 135.  The Models argue that Wonderland was forced to bear its own costs and enter a settlement based on Princeton's wrongful denial of coverage.  ECF No. 71 at 8-9.  Princeton argues that because the claims were assigned, Wonderland suffered no harm.  ECF No. 54 at 20.

The Court does not credit Princeton's argument that no harm was caused by the breach.  This argument was considered and rejected in *DeMarco*, where the Rhode Island Supreme Court upheld an assignment of rights when paired with a general release and a covenant not to execute.  26 A.3d at 618-22.  But while the Models have alleged damages and the Consent Judgment amount is definitively owed, they have put forward insufficient facts about Wonderland's actual defense costs, excess damages, or attorney's fees beyond those awarded in the Consent Judgment.[21]  Damages are disputed, and this issue is properly for a trier of fact.  If the Models (as assignees of Wonderland) seek to recover under a breach of contract theory, they will need to prove these damages at trial.

For these reasons, the Court GRANTS IN PART Defendants' Motion for Summary Judgment on Counterclaim I (breach of contract) as to liability but reserves the issue of damages for trial.  ECF No. 58.  The Court DENIES Princeton's Motion for Summary Judgment as to the same.  ECF No. 53.

---

[21] The Models can enforce the Consent Judgment under either an indemnity theory or a breach of contract theory.  Without bad faith, they are entitled to the "benefit of the bargain," including coverage up to the policy limits plus defense costs.  *See Bank of Rhode Island*, 19 F. Supp. 3d at 389 (insurer was liable for costs of defense and non-excluded claims).

### 2.    Declaratory Judgment (Counterclaim II)

The Models seek a declaratory judgment stating that Princeton had a duty to defend and indemnify Wonderland in the *Ratchford* Action.  ECF Nos. 40 and 58.

The parties do not dispute that Princeton owed a duty to defend, and the Court has already ruled on Counts I, II, IV, V, and IX (Exhibitions and Related Marketing Exclusion, other exclusions, and breach of contract).  *Supra Part A.*  Because Princeton has provided insufficient evidence to show why these exclusions apply, summary judgment will enter for the Models on these claims.

In other Counts, Princeton has raised many other coverage defenses, including Count III (exclusion for "Material Published with Knowledge of Falsity"); Count VI (exclusion for "Knowing Violation of Rights of Another"); Count VII (exclusion for "Criminal Acts"); Count VIII (exclusion for "Breach of Contract").  ECF No. 1. Princeton has not asked for summary judgment in its favor on these claims, and while Defendants have moved for summary judgment as to all Counts (and have effectively previewed their arguments), the Court lacks sufficient facts to determine whether these exclusions bar coverage.  Thus, summary judgment is not appropriate.

Because Defendants have requested summary judgment on *all* Counts, despite these disputes, the Court DENIES the Defendants' Motion for Summary Judgment on Counterclaim II (declaratory judgment) and DENIES Princeton's Motion as to the same.  ECF Nos. 53, 58.  As noted previously, Summary Judgment will enter in Defendants' favor on Princeton's Counts I, II, IV, V, and IX, with all other coverage defenses to be determined.  *Id.*

### 3.    Bad Faith (Counterclaims III and IV)

The Models have counterclaimed for common-law and statutory bad faith under R.I. Gen. Law § 9-1-33 (Counterclaims III, IV).[22]   ECF No. 40.   Princeton argues that these claims are barred by Rhode Island's prohibition on the assignment of bad faith claims.  ECF No. 54 at 20-21.

### a.    Assignment of Bad Faith Claims

Rhode Island law generally disfavors the assignment of bad faith claims, except in the limited circumstance where insurer has refused a good faith offer to settle within the policy limits, resulting in an excess judgment against the insured. *Mello v. Gen. Ins. of Am.*, 525 A.2d 1304, 1306 (R.I. 1987).  The general rule is that an insured may assign a bad faith claim to a plaintiff "for the limited purpose of recovering the difference between the judgment received against the insured and the insurance-policy limits."  *Id.*  The Court finds that this principle applies.

The prohibition on assignment of bad faith claims is meant as a backstop against champerty and maintenance, which are not at issue here.  *Etheridge v. Atl. Mut. Ins. Co.*, 480 A.2d 1341, 1344 (R.I 1984).  The Rhode Island Supreme Court has allowed such assignments after a trial on the merits and has held that "[s]uch agreements ought not to be rendered void or impeded by the simplistic maxim that

---

[22] Rhode Island law recognizes statutory claims under R.I. Gen. Law § 9-1-33 for wrongful refusal to settle, as well as common-law claims under *Skaling* and *Asermely. Columbia Cas. Co. v. Ironshore Specialty Ins. Co.*, No. CV 15-197-ML, 2016 WL 2930927, at *3 (D.R.I. May 19, 2016) (an insurer has a fiduciary duty to act in the best interests of its insured, including an "affirmative duty to engage in timely and meaningful settlement negotiations") (internal quotations omitted).

the common-law assignments of personal-injury claims [are] unenforceable."
*DeMarco*, 26 A.3d at 620; *Mello*, 525 A.2d at 1306 (citing *Etheridge*, 480 A.2d
at 1345). Wonderland's exposure was significant: the litigation plan put the value of
these claims at anywhere from $10,000 to $125,000 per image. ECF No. 56 at 156.
And even though the case was resolved via Consent Judgment rather than a trial on
the merits, it resulted in a judgment ($1.895 million) more than the Policy limits.[23]

While the law is unclear as to whether such claims may be assigned before
trial, neither party has asked the Court to certify the issue to the Rhode Island
Supreme Court. Thus, the Court finds that on these facts, the Rhode Island Supreme
Court would find, consistent with *Mello*, that the bad faith claims are assignable.

### b.    "Fairly Debatable"

Bad faith is established if the insurer "denied coverage or refused payment
without a reasonable basis in fact or law for the denial." *Skaling*, 799 A.2d at 1010.
The standard is whether the claim is "fairly debatable." *Id.* at 1011. Bad faith applies
if there is "sufficient evidence from which reasonable [minds] could conclude that in
the investigation, evaluation, and processing of the claim, the insurer acted
unreasonably and either knew or was conscious of the fact that its conduct was
unreasonable." *Id.* (internal quotations and citations omitted).

The Models have not established bad faith for the denial of the 2017 to 18
Policy as a matter of law because—while the claim was not "fairly debatable"—the

---

[23] The limit for personal and advertising injury for the 2017 to 18 Policy was
$1 million. ECF No. 59-5 at 38.

Models have put forward no evidence that Princeton acted unreasonably in attempting to enforce the Exhibitions and Related Marketing Exclusion, or that it was conscious of the fact that doing so would render the Policy illusory. Princeton's refusal to settle these claims may have been a breach of contract, but it was reasonable given its coverage position.

As to Princeton's denial of claims for the 2016 to 17 Policy, this issue should go to a jury. The Models point to Princeton's dilatory conduct, ambiguity in its coverage position, and strategic silence in the face of the Models' proposal. ECF No. 58-1 at 9-14. In Rhode Island, insurers have an "implied obligation to promptly and fully respond to their insured, to investigate a claim and to subject that claim to appropriate review." *Houle v. Liberty Ins. Corp.*, 271 A.3d 591, 595 (R.I. 2022) (citing *Skaling*, 799 A.2d at 1010). The Models have put forward evidence on these claims, which Princeton disputes. The issue is for the trier of fact.

For this reason, the Court DENIES summary judgment on Wonderland's claim for bad faith and DENIES Princeton's Motion as to the same (Counterclaims III and IV). ECF Nos. 53, 58.

### 4. Estoppel

The Models argue as an affirmative defense that because Princeton denied coverage in its reservation of rights letter, it is estopped from denying coverage or asserting defenses based on Wonderland's purported breach of contract. ECF No. 58-1 at 27-29. Defendants' Motion for Summary Judgment on its affirmative defense is

DENIED as moot, as the Court found that Princeton wrongfully denied coverage under the 2017 to 18 Policy and waived its right to defend.  *Supra Part A.*

### 5.    Dismissal of All Claims

Lastly, the Models seek summary judgment dismissing all claims against them.  ECF No. 58-1 at 29-35.  The Court has already granted summary judgment in their favor as to Counts I, II, IV, V, and IX.  Because the Court has denied Princeton's "no harm" argument, the Models are also entitled to summary judgment on Count X. The Rhode Island Supreme Court has upheld a covenant not to execute when paired with a general release, and because Wonderland's rights were not extinguished in the assignment, this claim fails as a matter of law.  *DeMarco*, 26 A.3d at 618-22.

As for the remaining claims, the Court DENIES the Defendants' Motion for Summary Judgment as to Counts III, VI, VII, and VIII, which relate to Princeton's remaining coverage defenses.  The Court also DENIES the Defendants' Motion as to Counts XI and XII, which relate to Princeton's duty to indemnify and cannot be resolved until these exclusions are heard and resolved by a jury.  ECF No. 58.

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for Summary Judgment as to Counts I, II, IV, V, and IX (coverage exclusions and breach of contract) and GRANTS Defendants' Motion for Summary Judgment as to the same. ECF Nos. 53, 58.  The Court finds that the Exhibitions and Related Marketing exclusion does not bar coverage and that Princeton has put forward no evidence that

the Consent Judgment included punitive damages or claims before and after the policy period. *Supra Part A.*

As for Princeton's obligations under the contract, the Court finds that:

1. Princeton owed a duty to defend Wonderland in the *Ratchford* Action;

2. Princeton breached its duty by wrongfully denying coverage and failing to engage in reasonable settlement negotiations under the 2017 to 18 Policy;

3. Wonderland did not breach the terms of its insurance agreement and properly assigned its claims to the Models;

4. The Consent Judgment is not unreasonable as a matter of law.

The Court DENIES Defendants' Motion for Summary Judgment as to Counts III, VI, VII, and VIII (other coverage exclusions), GRANTS Defendants' Motion for Summary Judgment as to Count X and DENIES Plaintiff's and Defendants' Motions for Summary Judgment as to Counts XI and XII (declaratory judgment on Princeton's duty to indemnify). ECF Nos. 53, 58. If Princeton proves its remaining coverage defenses, the Models will have the burden to allocate between covered and non-covered claims. *TranSched Sys. Ltd.*, 67 F. Supp. 3d at 533.

Lastly, the Court GRANTS IN PART Defendants' Motion for Summary Judgment on Counterclaim I (breach of contract) as to liability only. ECF No. 58. To the extent that the Models seek to recover damages beyond the Consent Judgment, this issue is reserved for trial. *Supra Part B.* The Court DENIES Defendants' Motion for Summary Judgment on Counterclaim II (declaratory judgment), DENIES Defendants' Motion for Summary Judgment as to Counterclaims III and IV (bad

faith), and DENIES Princeton's Motion for Summary Judgment on all Counterclaims, finding disputes of material fact that should be resolved at trial.  ECF Nos. 53, 58.

The Counts and Counterclaims that remain after this Order on the Summary Judgment motions are as follows: Count III (exclusion for "Material Published with Knowledge of Falsity"); Count VI (exclusion for "Knowing Violation of Rights of Another"); Count VII (exclusion for "Criminal Acts"); Count VIII (exclusion for "Breach of Contract"); Counts XI and XII (duty to indemnify); Counterclaim I (damages for breach of contract); Counterclaim II (duty to indemnify); and Counterclaims III and IV (bad faith).  ECF Nos. 53, 58.  On the record before the Court, these claims cannot be resolved for either party as a matter of law and are properly reserved for a jury.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

---

John J. McConnell, Jr.
Chief Judge
United States District Court

March 26, 2024

34